Robert J. McKennon (SBN 123176) *rm@mckennonlawgroup.com*
Joseph S. Hoff (SBN 283856) *jh@mckennonlawgroup.com*
**McKennon Law Group PC**
20321 SW Birch Street, Suite 200
Newport Beach, California 92660
Phone:  949-387-9595  |  Fax:  949-385-5165

Attorneys for Plaintiff Todd Miller

**FILED**

Oct 15 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ AmyC          DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD MILLER,<br><br>        Plaintiff,<br><br>vs.<br><br>PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.:   **'21 CV1778 TWR BLM**<br><br>Action Filed:<br><br>Trial Date:<br><br>---<br><br>**COMPLAINT FOR RECOVERY OF ERISA PLAN BENEFITS; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PRE-JUDGMENT AND POST-JUDGMENT INTEREST AND ATTORNEYS' FEES**<br><br><br>[Filed Concurrently With:<br>  -  Civil Cover Sheet; and<br>  -  Certification of Interested Parties] |

## INTRODUCTION

1.      This lawsuit is necessary because, when presented with a disability claim by Plaintiff Todd Miller ("Plaintiff" or "Mr. Miller") – a patent attorney who reported that significant medical conditions prevented him from performing the substantial duties of his occupation on a full-time basis – Defendant Provident Life and Accident Insurance Company, a wholly owned subsidiary of Unum Group ("Unum") improperly denied his claim, based on a biased, self-serving and erroneous examination of the medical records.  As a result of his disability, Mr. Miller, pursuant to the recommendations of his treating physicians, was forced to reduce his weekly hours by half from approximately 60 to 30 hours per week and take a proportional reduction in salary, avoid stressful work activities such as confrontational tasks involving opposing counsel, by significantly reducing motion hearings and abstaining from trial work (shifting those tasks to his partners).  The denial decision was improper and in bad faith for multiple reasons.  Unum failed to examine Plaintiff in person, instead relying on cursory "paper reviews" of his medical records by paid consultants who focused on cherry-picked statements from the record that were out of context and distorted Plaintiff's true medical condition.  Most tellingly, these paid consultants focused on Mr. Miller's condition after he reduced his workload—those reductions generally causing his symptoms to abate.  Unum also ignored pertinent evidence that supported Plaintiff's disability status and wrongly determined that the information contained in Plaintiff's file did not support restrictions and limitations.  The administrative record unequivocally shows that Plaintiff was, and is, unable to perform the duties of his own occupation in the usual and customary way because of his serious medical condition; therefore, Unum's denial decision was incorrect, unreasonable and contrary to the medical evidence.

## JURISDICTION AND VENUE

2.      Plaintiff brings this action to recover benefits and to enforce and clarify his rights under Section 502(a)(1)(B) of the Employee Retirement Income Security

1  Act of 1974 ("ERISA"), 29 U.S.C. Section 1132(a)(1)(B).  This Court has subject-

2  matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502(e) and (f),

3  29 U.S.C. Section 1132(e) and (f), and 28 U.S.C. Section 1331.

4        3.      Venue lies in the Southern District of California pursuant to ERISA

5  Section 502(e)(2), 29 U.S.C. Section 1132(e)(2), because Plaintiff resides in this

6  district, some of the alleged breaches occurred in this district and the ERISA-

7  governed plan at issue was administered in part in this district.

8                              **THE PARTIES**

9        4.      Plaintiff is an individual who, at all times relevant to this action, was a

10  citizen of the State of California and a resident of the City of San Diego, California.

11  Further, at all times relevant to this action, Plaintiff was a participant, as defined by

12  ERISA Section 3(7), 29 U.S.C. Section 1002(7), in the employee welfare benefit

13  plan (the "Plan") established by his employer, Fish & Richardson, P.C. ("Fish &

14  Richardson"), which is at issue in this action.

15        5.      Unum, at all times relevant, administered long-term disability ("LTD")

16  benefits provided to Plan participants, including Plaintiff, by issuing group policy

17  number 38017 (the "Policy") to Fish & Richardson.  The Policy promised to pay

18  disability benefits to Plaintiff should he become disabled.  Unum has acted as a

19  claims administrator and as an ERISA claims fiduciary of the Plan.

20        6.      The true names and capacities, whether individual, corporate, associate

21  or otherwise, of the defendants named herein as DOES 1 through 10, inclusive, are

22  unknown to Plaintiff at this time, who therefore sues DOES 1 through 10 by

23  fictitious names and will ask leave of the Court to amend this Complaint to show the

24  true names and capacities of DOES 1 through 10 when the same are ascertained.

25  DOES 1 through 10 are sued as principals and/or agents, servants, attorneys or

26  employees of said principals, and all of the acts performed by them were within the

27  course and scope of their authority and employment.  Plaintiff is informed and

28  believes and thereupon alleges that each of DOES 1 through 10 is legally

Case No.:



responsible in some manner for the events referred to herein, and directly and proximately caused the damages and injuries to Plaintiff as hereinafter alleged.

**FACTUAL BACKGROUND**

8.     Mr. Miller began working for Fish & Richardson in 1998.  At the time when he became disabled, on January 2, 2020, he was employed as a patent litigator, working over 60 hours per week.  He has been a principal at Fish & Richardson since 2007.  He is still employed as a patent litigator for the firm; however, due to his disability, he is unable to perform certain essential functions of his occupation, and has been forced to reduce his work schedule to approximately 30 hours per week.

9.     As a patent litigator, Mr. Miller is responsible for handling complex patent business and litigation matters.  His job duties include: case management; client management; development of legal strategies; legal and technical analysis; taking and defending of depositions; interviewing and preparing witnesses for deposition and trial testimony; drafting and reviewing expert reports and motions; presenting arguments before courts; trials; patent licensing; associate mentoring and training; and business development.  His tasks vary markedly based on the needs of his clients, the projects in which he is involved and the procedural phase of the litigations that he is running.  He works in a fast-paced, challenging environment that requires paying strict attention to detail, maintaining focus and concentration for extended periods of time and working long hours.  According to Unum's vocational assessment, the cognitive demands of Mr. Miller's position include: influencing others in their opinions, attitudes and judgments; dealing with people; and having extremely high general learning ability, verbal aptitude and numeric aptitude.  The vocational assessment further recognized that patent lawyers must be adept at maintaining focus and concentration, multitasking, meeting deadlines and comprehending and analyzing complex data.



Case No.:

10.     Pursuant to the terms and conditions of the Policy, Mr. Miller is entitled to LTD benefits because he met, and continues to meet, the Policy's operative definition of "Disabled" and the other conditions necessary to qualify for LTD benefits during the relevant time.

The Policy states:

You are disabled when Unum determines that:

- You are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and

- You have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.[1]

**Material and Substantial Duties** means duties that are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified.

The Policy defines **Regular Occupation** as it pertains to attorneys as follows:

For attorneys, "regular occupation" means your specialty in the practice of law which you are routinely performing when your disability begins.  Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

The Policy also contemplates that Unum will pay a disabled claimant disability benefits if he or she is disabled and continues to work as follows:

**HOW MUCH WILL UNUM PAY YOU IF YOU ARE DISABLED AND WORKING?**

We will send you the monthly payment if you are disabled and your monthly **disability earnings**, if any, are less than 20% of your indexed monthly earnings, due to the same sickness or injury.

If you are disabled and your monthly disability earnings are from 20% through 80% of your indexed monthly earnings, due to the same sickness or injury, Unum will figure your payment as follows:

---

[1] Mr. Miller meets the 20% loss-of-earnings requirement.  According to his Employer Statement submitted in support of his LTD claim, at a minimum, his loss of earnings is 37.2%.





During the first 12 months of payments, while working, your monthly payment will not be reduced as long as disability earnings plus the gross disability payment does not exceed 100% of indexed monthly earnings.

1. Add your monthly disability earnings to your gross disability payment.

2. Compare the answer in Item 1 to your indexed monthly earnings.

If the answer from Item 1 is less than or equal to 100% of your indexed monthly earnings, Unum will not further reduce your monthly payment.

If the answer from Item 1 is more than 100% of your indexed monthly earnings, Unum will subtract the amount over 100% from your monthly payment.

After 12 months of payments, while working, you will receive payments based on the percentage of income you are losing due to your disability.

1. Subtract your disability earnings from your indexed monthly earnings.

2. Divide the answer in Item 1 by your indexed monthly earnings. This is your percentage of lost earnings.

3. Multiply your monthly payment by the answer in Item 2.

This is the amount Unum will pay you each month.

(Emphasis in original).

10.     Under the Policy, Mr. Miller is entitled to a monthly benefit of $27,500 if he is totally disabled and if he is partially disabled, he is entitled to a smaller benefit amount according to the formula set forth above.[2]

11.     The Policy contains a 180-day elimination period, after which benefits become payable.  Given Mr. Miller's age at the time of his disability (he was 56), the maximum benefit period under the Policy is to age 65, or to June 19, 2028.

12.     Mr. Miller has met the Policy's definition of "Disability" during all relevant periods of time due to his objective medical condition and disabling

---

[2] The LTD Policy provides for a monthly benefit of 0% of the first $12,500 of monthly earnings plus 60% of the next $45,833 of monthly earnings to a maximum benefit of $27,500 per month.  Based on Mr. Miller's pre-disability monthly earnings, he is entitled to the maximum benefit amount under the Policy.  The Policy also provides for reductions for certain deductible income, none of which are applicable to Mr. Miller's claim.

Case No.:

symptoms.  On January 3, 2020, pursuant to the advice of his physicians, Mr. Miller reduced his work schedule to half time, or 30 hours per week.

13.     The details of Mr. Miller's medical condition are confidential.  Mr. Miller's medical records were provided to Unum pursuant to agreements maintaining their confidentiality.  Mr. Miller is, of course, willing to make his medical information available to the Court and fact finder in this matter under similar confidentiality provisions.  Mr. Miller requests entry of a Protective Order/Sealing Order to permit him and/or Unum to submit such information under seal.  Mr. Miller requests that Unum continue to abide by its confidentiality agreements and not introduce any portion of his medical records into the record in this matter except under the provisions of a Protective Order/Sealing Order entered by this Court.

14.     On January 24, 2020, Mr. Miller submitted his disability claim to Unum under the Policy.  In his application, he identified the cause of his disability. He explained that, due to his objective medical condition and disabling symptoms, he was unable to perform the quantity of work required of his occupation and that his treating physicians had recommended that he reduce his workload to half time, or to 30 hours per week.

15.     In support of his application, Mr. Miller submitted an Attending Physician Statement ("APS") signed by his primary treating physician ("Dr. S.") on January 13, 2020.  Dr. S. is a world-renowned physician, Board certified in the treatment of Mr. Miller's medical condition and Distinguished Professor of Medicine at the University of California, San Diego School of Medicine ("UCSD SOM").  For the past decade, Dr. S. was the Division Chief of the relevant division at UCSD SOM and director of the medical center that specialized in the treatment of Mr. Miller's medical condition.  In the APS, Dr. S. reported Mr. Miller's primary diagnosis and a summary of his treatment history and prognosis.  Based on Mr. Miller's condition, Dr. S. recommended a reduced work schedule of 30 hours per

Case No.:



week.  He stated that Mr. Miller's restrictions were expected to last through June 19, 2028, which is the maximum benefit date under the Policy.

16.     As part of its claims-review process, on January 31, 2020, Unum representative Coe Garon spoke with Mr. Miller by telephone to discuss his claims. During the telephone call, Mr. Miller stated that his doctors had been advising him for some time to cut back on his work, but that he had not taken their advice.  He informed Ms. Garon that he used to work over 60 hours per week and was on call 24 hours per day, seven days per week.  He reported that, due to his objective medical condition and disabling symptoms, he has been unable to maintain his prior level of work activity.

17.     On February 26, 2020, at Unum's request, Mr. Miller completed an Attorney Questionnaire in support of his claims.  In the questionnaire, he reported the duties that he can no longer perform in any capacity following his disability including attending and arguing motions and hearings, mediations/alternative dispute resolution, and trials.  He also stated that, beginning in November 2019, in consultation with Dr. S., he had begun to reduce his work hours and that a formal reduction to half time occurred in January 2020.  He explained that the reduction was necessitated by his objective medical condition and disabling symptoms.

18.     On February 28, 2020, Unum's in-house vocational consultant, Mary Cloutier, completed a vocational analysis regarding Mr. Miller's claims.  Ms. Cloutier determined that Mr. Miller's job as a patent attorney was a highly skilled occupation that requires maintaining focus, concentration and memory, performing multi-tasking, meeting deadlines and comprehending and analyzing complex data. She also noted that the job typically requires working more than 40 hours per week and occasional travel.  Lastly, she noted that lawyers may face heavy pressure during work, such as when in trials or when trying to meet deadlines.

19.     On March 25, 2020, Ms. Cloutier spoke with Mr. Miller by telephone regarding the travel demands of his job.  Mr. Miller explained that the travel

-7-



Case No.:

demands vary widely depending on the phase of each case he is handling and the number of cases that he is working on.

20.     On March 26, 2020, Ms. Cloutier completed a supplemental vocational analysis in which she detailed Mr. Miller's travel demands as described during the March 25 telephone call.  She concluded her report by stating that Mr. Miller would sustain a loss of billing and visibility if he did not continue to perform the normal and customary duties of his job.

21.     On March 12, 2020, Dr. S. submitted a second APS to Unum in which he listed Mr. Miller's primary diagnosis.  He stated, among other things, that he had recommended that Mr. Miller decrease his work hours to 30 per week.

22.     On March 19, 2020, Unum's physician consultant, Frederic H. Schwartz, M.D., spoke by telephone with a nurse practitioner in the office of Dr. S. ("N.P.C.") to discuss Mr. Miller's restrictions.  Dr. Schwartz advised N.P.C. that he could not support restrictions on Mr. Miller's work activity to 30 hours per week. He reported that N.P.C. disagreed with his assessment and informed him that Mr. Miller had significant medical difficulties supporting the recommended reduction in work activity.  Dr. Schwartz stated that, at the conclusion of the conversation, N.P.C.'s opinion remained the same: she and Dr. S. continued to support a reduction in work hours due to Mr. Miller's symptoms.

23.     On March 31, 2020, despite having clear evidence supporting Mr. Miller's disability and no statement from his treating physicians that he was able to return to full-time work, Unum informed Mr. Miller that it was denying his claim for LTD benefits.  Unum, erroneously and in bad faith, determined that the medical records did not support restrictions and limitations that would preclude Mr. Miller from performing a 60-hour work week in his own occupation.  Unum relied solely on the opinions of its paper reviewers Dr. Schwartz and Neal Greenstein, M.D., neither of whom is a specialist in Mr. Miller's medical conditions.  These two doctors only conducted paper reviews of Mr. Miller's records.  Both consultants

Case No.:



summarily concluded, without speaking to or examining Mr. Miller, that Mr. Miller was not functionally limited and that no restrictions were medically indicated. To support their opinions, Drs. Schwartz and Greenstein improperly focused on cherry-picked statements from the records, including statements that Mr. Miller was feeling better that were made *after* Mr. Miller reduced his work hours by half. For example, they both pointed to a January 13, 2020 note from NPC that stated Mr. Miller was feeling better than his last visit and that his underlying medical condition was controlled. But that ignored later medical records indicating the fluctuating nature of Mr. Miller's symptoms which rendered the January 13, 2020 note dated and inapplicable to later periods. Unum's reviewer Matthew Masny made this clear in his summary of Mr. Miller's office visit of March 16, 2020 in which his physician notes the serious and fluctuating nature of his medical conditions and noted that he was not feeling better and his symptoms had increased again significantly. On December 3, 2020, Mr. Miller, through his counsel, submitted an appeal letter to Unum, disputing Unum's decision to deny LTD benefits. Enclosed with the appeal letter was supporting documentation, including Mr. Miller's personal statement, disability certification letters from Dr. S. and N.P.C. and scholarly articles addressing Mr. Miller's medical condition and its consequences. Notably, the scholarly articles described side-effects associated the medications Mr. Miller takes to treat his underlying medical condition. Those side-effects are consistent with the disabling symptoms experienced by Mr. Miller.

24.    The appeal letter detailed Mr. Miller's medical and occupational history, as well as the procedural history related to his claim for disability benefits. The letter also explained that the denial of benefits was in error because: (1) Mr. Miller is disabled, as that term is defined in the Policy, and an unbiased review of his medical records reveals that the medical documents *do* support his functional limitations and his continued claim for total disability under the Policy; and (2) Unum improperly relied on deficient "peer reviews" of Mr. Miller's medical records

Case No.:



by biased medical consultants who did not examine him, who ignored key medical reports while focusing on other "cherry-picked" records and whose opinions were conclusory and contradicted the medical evidence. Unum provided no response to the scientific literature associating Mr. Miller's pharmaceutical treatment with the disabling symptoms he reported.

25.     Mr. Miller's personal statement submitted in support of his appeal described why he is unable to function at his previous level and is unable to perform the substantial and material duties of his occupation in the usual and customary way. He also explained that he loves his job and that his inability to perform his job at his previous level has been extremely difficult for him personally and professionally.

26.     In Dr. S.'s certification letter dated November 30, 2020, he firmly advocated for Mr. Miller's continued disability.  He stated that, due to Mr. Miller's ongoing medical condition and disabling symptoms, Mr. Miller is unable to perform the full-time duties required of his occupation.  He concluded his letter by stating, **"It is my professional opinion that Mr. Miller was and continues to be unable to return to his previous level of functioning and that he is limited to 30 hours of work per week for now and in the foreseeable future."**  Dr. S.'s letter was based on his numerous *in-person* examinations of, and discussions with, Mr. Miller over the past two years.

27.     In N.P.C.'s certification letter dated November 30, 2020, she likewise firmly advocated for Mr. Miller's continued disability.  She explained that she is an experienced Board-certified Nurse Practitioner specializing in the care of patients suffering from Mr. Miller's medical condition.  She stated that she strongly believes that Mr. Miller is unable to perform the duties of his occupation on a full-time basis due to his medical condition and disabling symptoms.  She noted that she has treated Mr. Miller for his medical condition since January 2016 and that his condition is incurable.  She concluded her letter by stating that in view of his symptoms and the

Case No.:



marked departure from Mr. Miller's baseline activity level, she continued to believe that a reduced workload to about half time was medically appropriate.

28. Also included with Mr. Miller's appeal letter were several articles that addressed the link between his objective medical condition and his disabling symptoms.

29. As part of the appeal-review process, on February 8 and 15, 2021, Unum referred Mr. Miller's file to two more of its paid physician consultants, Peter Brown, M.D. (psychiatry) and Chris Bartlett, M.D. (family medicine), for yet more paper reviews of the medical records. Neither of these physicians specialized in the treatment of Mr. Miller's medical condition. These reviews were completely inadequate and violated ERISA regulations for a full and fair review.

30. With respect to Dr. Brown's report, he spent far more time on summarizing Mr. Miller's medical history than he did on answering the questions directed at the reviewer. Dr. Brown dedicated two short paragraphs in his cursory report to discussing the rationale behind his conclusion that restrictions and limitations are not supported from a behavioral health perspective. This lack of analysis demonstrates that Dr. Brown's report is seriously flawed. In his report, he suggested a failure by Mr. Miller to seek care of a particular specialist, disregarding the fact that Mr. Miller had, in fact, obtained that care from such a specialist, Dr. N., some ten months earlier, on April 7, 2020, and for several months thereafter. Notwithstanding his mistake of fact, the premise of Dr. Brown's report sought to impose burdens on Mr. Miller that were not required by the Policy. It was improper for Unum and its consultant to impose upon Mr. Miller requirements to qualify for disability that are not contained within the Policy.[3]

31. While lack of care from a specialist in Dr. N.'s field was the basis for Dr. Brown's opinion, the claim file established that Mr. Miller *had undergone* treatment with such a particular specialist, Dr. N. On April 10, 2020, Dr. N. signed

---

[3] *See Saffle v. Sierra Pacific Power Co.*, 85 F.3d 455, 459-60 (9th Cir. 1996).



an APS in support of Mr. Miller's claims.  In the APS, she described Mr. Miller's diagnosis and symptoms.  She agreed that Mr. Miller should be limited to 30 hours of work per week.  Given Dr. Brown's failure to afford Dr. N.'s opinion due weight, in fact any weight, and given the conclusory and perfunctory nature of his analysis, it was improper for Unum to rely on his report to support its claim denial.

32.    Regarding Dr. Bartlett, he concluded – without having examined or spoken to Mr. Miller or to any of his treating providers – that the medical information did not support impairment sufficient to preclude full-time work.  The focus of Dr. Bartlett's report and Unum's reliance upon it were improper as both improperly required objective evidence of inherently subjective complaints while disregarding reams of objective medical records and the opinions of Mr. Miller's treating physicians – who were specialists in their field.  *See Hagerty v. American Airlines Long Term Disability Plan*, 2010 U.S. Dist. LEXIS 91995 at *6 (N.D. Cal., Sept. 3, 2010) (noting that "[n]umerous courts found it [in] error to require objective medical evidence of complaints that are inherently subjective in nature").  Throughout his report, Dr. Bartlett wrongly discounted Mr. Miller's subjective complaints, even though these complaints were corroborated by Mr. Miller's treating physicians and aligned with Mr. Miller's objective medical records and medical diagnoses.

33.    Second, Dr. Bartlett stated that the absence of a sleep study in Mr. Miller's records was inconsistent with vocational impairment.  Unum and its consultants were again imposing upon Mr. Miller additional requirements to qualify for disability that are not contained within the Policy.  The Policy does not contain a provision that requires insureds to undergo this specific study to recover benefits for Mr. Miller's disability.  In any event, Mr. Miller *had undergo*ne a sleep study on February 9, 2021 at the recommendation of another of his treating physicians.  A copy of the study report was provided to Unum during the administrative appeal phase.  That Mr. Miller sought out this additional testing, independent of and before



receiving Dr. Bartlett's report, directly undermines Dr. Bartlett's opinion. Furthermore, the claim file shows that Mr. Miller has explored several alternative causes for his medical condition in the hope that he might be able to return to his normal work schedule.  Unfortunately, none have proven to be the cause of his disabling symptoms.  Mr. Miller's doctors continue to believe that the medical condition being treated by Dr. S. and N.P.C. are the cause of his disability.

34.     Third, Dr. Bartlett stated that Mr. Miller's ability to work 30 hours per week since January 2020, plus his ability to engage in regular exercise and yardwork, are inconsistent with vocational impairment.  Contrary to Dr. Bartlett's suggestion, the fact that Mr. Miller was exercising and working in his yard does not mean that he could work 60 hours per week as a patent attorney as he had for more than 20 years prior to his disability.  Those physical activities, recommended by his treating physicians and engaged in by Mr. Miller for decades prior to his disability, have no bearing on Mr. Miller's ability to perform the challenging mental demands of his job, which (as Unum recognized) is a highly skilled occupation in which attention to detail and focus and concentration are key aspects of the job.  In addition, Dr. Bartlett's contention regarding Mr. Miller's ability to work 30 hours per week misapprehends the entire basis for his disability claim.  Mr. Miller is asserting that, due to his disability, he is unable to work his usual, full-time 60-hour plus-per-week schedule and can *only* work 30 hours per week while avoiding certain stressful work activities.  Thus, contrary to Dr. Bartlett's opinion, Mr. Miller's ability to work only 30 hours per week (a reduced, part-time schedule) is entirely consistent with vocational impairment.  Dr. Bartlett also noted that Mr. Miller was able to work 60 hours per week with his medical condition for many years prior to the onset of his disability and that this somehow is inconsistent with impairment. Although Mr. Miller was able to work 60 hours per week for many years with his medical condition, the medical evidence shows that his condition shortly after Mr. Miller underwent a significant medical procedure became severe enough to render



1  Mr. Miller incapable of maintaining his previous work schedule.  Dr. Bartlett

2  improperly ignored this documented decline in Mr. Miller's condition.

3       35.    Dr. Bartlett also improperly focused on a few cherry-picked statements

4  from the medical records in which Mr. Miller reported that he felt improved.  This

5  included a May 28, 2020 office note in which Mr. Miller reported that he was

6  feeling "much better at this point."  Regarding the May 28 office note, this visit

7  occurred more than six months after Mr. Miller had reduced his work hours from 60

8  to 30 hours per week at the advice and with the consent of his doctor and began

9  avoiding stressful work activities such as confrontational tasks involving opposing

10  counsel by significantly reducing motion hearings and abstaining completely from

11  trial work (shifting those tasks to his partners).  Thus, it is no surprise that he was

12  feeling much better at that point because he had reduced his work schedule

13  significantly, demonstrating that his physician's recommendation was medically

14  appropriate.  Although Mr. Miller's condition had improved, the records do not

15  reflect that his condition had improved to the degree that he was capable of

16  resuming full-time work in terms of both hours and activities, and he has never been

17  cleared to do so by his treating physicians.  Importantly, when his symptoms

18  subsided, Mr. Miller tried to increase his workload, only to see his symptoms

19  quickly return.  Dr. Bartlett similarly mischaracterized a September 16, 2019 office

20  note.  That Mr. Miller did not stop working altogether, tried to increase his workload

21  and that he sought alternative medical explanations in the hope that he could return

22  full time to his job is clear evidence that his claim for disability is not a contrivance

23  and that he is not a malingerer.  The efforts by Unum and its stable of paid

24  consultants to portray Mr. Miller in such an unflattering light are not only wrong,

25  but entirely inconsistent with Mr. Miller's medical and work records.

26       36.    Just as Unum did during the initial denial of Mr. Miller's claim, Unum

27  and its consultants on appeal again ignored much of the evidence supporting Mr.

28  Miller's claim and instead focused on a few select statements in the medical records

Case No.:



that could be deemed favorable to Unum's position.  Unum's conduct here is, unfortunately, consistent with its past pattern of misconduct.

37.   In 2005, Unum entered into a settlement agreement ("CSA") with the California Department of Insurance ("CDI"), in connection with a market conduct examination and investigation of Unum's disability claims handling practices.  The CDI had chosen not to join the 2004 multistate settlement agreements Unum entered into with state insurance regulators of 48 states upon conclusion of a multistate market conduct examination of Unum's disability claims handling practices that became effective on December 21, 2004.  In the CSA, Unum agreed to give significant weight to an attending physician's opinion.  It requires Unum to:

> [g]ive significant weight to an attending physician's opinion, if the attending physician is properly licensed and the claimed medical condition falls within the attending physician's customary area of practice, unless the attending physician's opinion is not well supported by medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record.  In order for an attending physician's opinion to be rejected, the claim file must include specific reasons why the opinion is not well supported by medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record.

38.   In the CSA, Unum also agreed to the following, requiring it to offer every California claimant in writing of the right to request an independent medical examination at or just prior to the time it denies a claim:

> **Claimants Informed of Right to Request IME**
>
> As part of the information advising a California Claimant how to submit a claim or early in the process of reviewing an open claim and, in any event, prior to any decision being made to deny a recently submitted claim or to close an open claim, California Claimants shall be informed in writing that it is their right or the right of their attending physician (either directly or through the claimant's representative) to request an "independent medical examination" ("IME") of their medical condition, unless the decision is made to pay or continue to pay the claim.

Case No.:



39.     Unum violated the letter and spirit of the CSA when it favored the opinions of its paper reviewers over the opinions of Plaintiff's treating physicians and did not state the "specific reasons why the [attending physicians'] opinion[s] [are] not well supported by medically acceptable clinical or diagnostic standards and [are] inconsistent with other substantial evidence in the record."

40.     Unum further violated the letter and spirit of the CSA when it did not give Mr. Miller the notification that he could request an IME at the time of or just before denying his claim.  Unum sent letters dated January 28, 2020 and February 4, 2020 notifying him of his right to request an IME but this was at the time he opened his claim.  There was no motive for him to request an IME at that time as there was no pending claims decision.  His claim was finally denied by letter dated June 15, 2021.

41.     No notice of Plaintiff's right to an IME was provided just prior to, or at the time, Unum denied his claim on June 15, 2021.  The CSA makes it clear that a notice should be sent early in the claims process *and* prior to the denial of a claim: "[Notice must be given] as part of the information advising a California Claimant how to submit a claim or early in the process of reviewing an open claim ***and***, in any event, **prior to any decision being made to deny a recently submitted claim or to close an open claim."** (Emphasis added).  The January 28, 2020 notice did not comply.[4]

---

[4] The CSA applies to ERISA and non-ERISA plans subject to the jurisdiction of the CDI.  *See Cox v. Allin Corp. Plan*, 845 F. App'x 524, 525–26 (9th Cir.). Plaintiff is informed and believes that these provisions are also in Unum's Benefits Center Claims Manual for handling disability claims. It states: "We are required to notify claimants of their right to request an IME. See Claimant's Right to Request an IME." In the section entitled, "Claimant's Right to Request an IME," the manual states:

> Claimants must be notified of their right to request an IME:
> • at the start of each claim, and
> • if we are requesting updated medical information from the claimant and 5 years have elapsed since the last notification.

This misstates the requirement in the CSA that requires a notice be sent prior to denying or closing a claim.

Case No.:



42.    Unum has a history of erroneous and arbitrary claims benefits denials. As the Ninth Circuit as recognized in *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 933–34 (9th Cir. 2012):

> Numerous courts, including ours, have commented on Unum's history " 'of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics,' " McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 137 (2d Cir.2008) (quoting Radford Trust v. First Unum Life Ins. Co., 321 F.Supp.2d 226, 247 (D.Mass.2004), rev'd on other grounds, *934 491 F.3d 21, 25 (1st Cir.2007)). Indeed, in Saffon, we attributed the trend of state prohibitions on discretionary provisions in insurance contracts to "the cupidity of one particular insurer, Unum–Provident Corp., which boosted its profits by repeatedly denying benefits claims it knew to be valid. Unum–Provident's internal memos revealed that the company's senior officers relied on ERISA's deferential standard of review to avoid detection and liability." 522 F.3d at 867; see also Radford Trust, 321 F.Supp.2d at 247 n. 20 (collecting cases). Moreover, the CSA notes that Unum was subject to "a multistate targeted examination" of its "claims handling practices," which resulted in a settlement agreement similar to the CSA. And the CSA was the product of investigations by the State of California into Unum's claims handling practices.

43.    Despite the above-stated problems with their denial and in violation of the CSA, on March 10, 2021, Unum sent a letter to Mr. Miller's counsel, advising counsel that Unum intended to uphold the prior decision that denied Mr. Miller's claim.  Unum provided Mr. Miller's counsel with a copy of the paper review reports of Drs. Brown and Bartlett and provided Mr. Miller with an opportunity to respond to the reports.

44.    On April 27, 2021, Mr. Miller, through his counsel, submitted a letter to Unum, responding to Drs. Brown and Bartlett's conclusions and pointing out the many deficiencies in those reports, as discussed above.  In addition, included with the letter was an expert report from Perry Hookman, M.D., an expert in the treatment of patients having Mr. Miller's medical condition.  This report further highlighted the severity of Mr. Miller's medical condition and supported his assertion that he was, and is, unable to perform his job duties on a full-time, 60-hour-per-week schedule.  In his report, Dr. Hookman discussed in depth the peer-

-17-

Case No.:



1  reviewed literature and how Mr. Miller's medical condition and disabling symptoms

2  were entirely consistent with accepted medical knowledge.  Dr. Hookman's

3  explanation of the literature and description of Mr. Miller's medical condition

4  dovetailed precisely with the description Mr. Miller had provided by way of his

5  personal statement submitted with his initial appeal letter months before Dr.

6  Hookman provided his report.

7      45.    Dr. Hookman noted that Mr. Miller's medical condition can give rise to

8  the symptoms that Mr. Miller experiences and that this is especially problematic for

9  a patient like Mr. Miller due to the demands of his profession.  Dr. Hookman opined

10  that Mr. Miller's symptoms are very consistent with what has been reported in many

11  other patients with Mr. Miller's medical condition and are, in fact, a classic example

12  of that medical condition.  Dr. Hookman concluded his report by stating that it is his

13  professional opinion that Mr. Miller is unable to perform his occupation on a full-

14  time basis due to his medical condition and disabling symptoms.  His opinion is

15  based on his extensive review of Mr. Miller's medical records and the peer-

16  reviewed literature.  Dr. Bartlett failed to recognize the frequent and severe

17  association of symptoms like those reported by Mr. Miller in patients sharing Mr.

18  Miller's underlying medical condition.  Dr. Bartlett and Unum failed to explain how

19  Mr. Miller could be capable of working 60 hours per week in an extremely fast-

20  paced, high stress and mentally challenging position, when doing so would

21  demonstrably cause his medical condition to deteriorate substantially.

22      46.    On May 10, 2021, Unum sent Mr. Miller's counsel a letter stating that

23  Unum had reviewed the documentation that Mr. Miller had provided on appeal and

24  that Unum continued to believe that its decision to deny Mr. Miller's claim was

25  correct.  Unum relied on an addendum to the report written by Dr. Bartlett, who had

26  reviewed Mr. Miller's April 27, 2021 letter and concluded (with minimal analysis)

27  that the new information did not change his prior opinion.  Unum provided a copy of

28

Case No.:



1    Dr. Bartlett's addendum report to Mr. Miller with its May 10 letter and provided Mr.

2    Miller with an opportunity to respond to the report.

3         47.    On May 21, 2021, Mr. Miller, through his counsel, sent a letter to

4    Unum, responding to Dr. Bartlett's addendum report and providing additional

5    medical records in support of Mr. Miller's claim.  In the letter, Mr. Miller pointed

6    out that Dr. Bartlett had failed to address any of the arguments contained in Mr.

7    Miller's April 27, 2021 letter and, instead, had relied on the same factors to support

8    his opinion that had already been refuted by the April 27 letter.

9         48.    Dr. Bartlett also again discounted Mr. Miller's subjective complaints,

10   even though these complaints were corroborated by Mr. Miller's treating physicians

11   and even though they are entirely consistent with Mr. Miller's underlying

12   objectively demonstrated medical condition.  Dr. Bartlett made no effort to explain

13   why Dr. Hookman's opinion that Mr. Miller's condition renders him incapable of

14   full-time work was incorrect.  Dr. Bartlett made no effort to explain why any of the

15   medical references cited by Dr. Hookman was not directly relevant to Mr. Miller's

16   medical condition or disabling symptoms. He simply noted the fact that he had

17   received the Dr. Hookman's report but otherwise ignored it.  Unum's June 15, 2021

18   denial letter acknowledged that none of its paper reviewers analyzed Dr. Hookman's

19   report or in any way disputed it.  It merely excused this lack of response because Dr.

20   Hookman was not an attending physician and appeared to suggest that Dr. Hookman

21   could be effectively ignored.  Unum thus downplayed Dr. Hookman's opinion

22   because he was not an attending physician, yet it ignored the fact that both of its

23   paper reviewers were not attending physicians and Unum relied fully on their

24   opinions to deny Mr. Miller's claim.

25        49.    Dr. Bartlett also inaccurately stated in his addendum that Mr. Miller

26   had not pursued alternative causes for his condition and that this absence of looking

27   for a curable cause is inconsistent with his reports of vocational impairment.  As the

28

Case No.:



1   claim file demonstrates, Mr. Miller *had already* pursued multiple alternative causes.

2   Dr. Bartlett's inaccurate statement underscores the unreliability of his opinion.

3       50.   Despite the substantial medical evidence supporting Mr. Miller's

4   disability, including the medical records and opinions of his treating physicians and

5   a qualified expert, Unum deferred to the opinion of its paper reviewers and upheld

6   the denial of Mr. Miller's LTD benefits by letter dated June 15, 2021.  Unum's

7   denial letter mirrors the deficient reasoning of its medical consultants, who, as

8   discussed above, authored conclusory opinions that Unum should not have relied

9   upon to deny Mr. Miller's claim.

10      51.   There are many problems with the conclusions of Unum's medical

11  consultants and thus with Unum's benefits decision that was based on them.  First,

12  Drs. Schwartz, Greenstein, Brown and Bartlett are Unum's paid in-house

13  consultants who have been used repeatedly by Unum in the past to give disability

14  opinions, which demonstrates their obvious bias in favor of the insurance industry.

15  The Supreme Court has recognized that fiduciaries, such as Unum, use medical

16  reviewers on a regular basis.  The concern arises from the fact that the physicians

17  may be financially motivated to render opinions in favor of the insurer.  *See Black &*

18  *Decker Disability Plan v. Nord*, 538 U.S. 822, 832, 155 L.Ed.2d 1034 (2003).

19      52.   Second, Drs. Schwartz and Greenstein, who specialize in internal

20  medicine, and Dr. Bartlett, who specializes in family medicine, do not have the

21  proper expertise, training or Board certification to give credible opinions regarding

22  Mr. Miller's medical condition.

23      53.   ERISA regulations outlining the requirements for a full and fair review

24  of a participant's claim on appeal provide that "the appropriate named fiduciary

25  shall consult with a health care professional who has appropriate training and

26  experience in the field of medicine involved in the medical judgment." 29 C.F.R. §

27  2560.503-1(h)(3)(iii); *Id.* § 2650.503-1(h)(4).

28



54.     This was not done in Mr. Miller's case.  In stark contrast, Mr. Miller's treating physician, Dr. S., who repeatedly certified his disability, is a Board-certified specialist and one of the world's top experts in the management of Mr. Miller's objective medical condition.  In addition, Dr. Hookman, who reviewed Mr. Miller's medical records and whose expert opinion report was provided to Unum, is a Board-certified specialist in the treatment of Mr. Miller's objective medical condition and also agreed that Mr. Miller is disabled from his occupation.  Dr. S., who regularly treated Mr. Miller in person for over two years, and Dr. Hookman, who has over 40 years of experience in caring for patients with Mr. Miller's medical condition, are far better suited than Drs. Schwartz, Greenstein, Brown and Bartlett to render credible opinions regarding Mr. Miller's limitations based on his specific medical condition.

55.     Third, Unum's consultants failed to examine or even speak with Mr. Miller, even though the Policy permitted it.  Therefore, their opinions, based purely on a "cold file review" of Mr. Miller's medical records, carry far less weight than the opinion of Mr. Miller's treating specialist, who regularly examined him in person for over two years and consequently gained great insight into his work limits. *See, e.g., Sullivan v. The Prudential Insurance Co. of America*, 2014 WL 3529974, at *33 (E.D. Cal. Jul. 15, 2014).

56.     Unum's failure to have Mr. Miller examined by its physician consultants raises questions about the credibility of these physicians' opinions and the thoroughness and accuracy of Unum's benefits decision.  *See Shaw v. AT&T*, 795 F.3d 538, 550 (6th Cir. 2015).

57.     Drs. Greenstein, Bartlett and Brown failed to speak with any of Mr. Miller's treating physicians, including, Dr. S., who regularly treated him for over two years and opined that he is unable to perform the full-time duties of his occupation.  The failure to speak with Dr. S. evidences the unreliability and bias of these physicians' conclusions.

-21-



58.     As Dr. Hookman explained in his report, Dr. Greenstein's opinions are not reliable because:

- Dr. Greenstein does not document any evidence for his opinion.
- He does not show any peer reviewed references to back up his opinion.
- Contrary to Dr. Greenstein's opinion there is much evidence documented in Dr. Hookman's report that proves Mr. Miller's medical condition causes his fatigue.
- According to all the peer reviewed literature Dr. Hookman references in his report, these references provide the burden of proof needed to prove that Mr. Miller can no longer engage in his high complexity job summarized by Unum representative Coe D. Garon.

59.     As Dr. Hookman explained in his report, Dr. Schwartz's opinions are not reliable because:

- His opinion is contrary to what is true and evidenced based.
- Mr. Miller's symptoms of fatigue fit in very well with what been reported in dozens of similar cases.  These complaints fit in exactly with the experience of most practicing gastroenterologists and also with the peer reviewed medical literature.
- All evidence in these records support such Mr. Miller's diagnoses.
- Dr. Schwartz knew or should know from the peer reviewed literature references that there is a large gap in scientific knowledge of one of his medical conditions.

60.     In addition, as detailed above, the consultants' reports are conclusory and vague and contradict the medical evidence.  Unum and its physicians improperly ignored substantial evidence that supported Mr. Miller's disability diagnosis as documented in his medical records; Mr. Miller's statements to Unum's claim representative; and the opinions of Dr. S., N.P.C. and Dr. Hookman that Mr.



1   Miller was unable to perform full-time work and that a 30-hour work week was

2   recommended.

3       61.   Unum and its physician consultants also completely failed to consider

4   how Mr. Miller's disability was directly linked to his underlying objective medical

5   condition.  As discussed herein, Mr. Miller's job involved complex thinking and

6   decision-making and a high degree of concentration.  Unum's own vocational

7   review concluded that Mr. Miller's occupation required, among other things, the

8   ability to maintain sustained focus and concentration and the ability to deal with

9   people face to face, by telephone and via email.  Unum and its consultants failed to

10  adequately consider whether Mr. Miller's medical condition prevented him from

11  meeting the challenging mental demands of his job and, instead, they appeared to

12  focus primarily on the fact that Mr. Miller was physically capable of performing

13  unrelated tasks such as exercising or gardening.  Unum's failure to consider the full

14  scope of Mr. Miller's job duties evidences its arbitrary and capricious handling of

15  his claim.

16      62.   Unum acted unreasonably by denying Mr. Miller's disability benefits

17  without first thoroughly investigating the *side effects* of the medications that he

18  takes to treat his underlying medical condition and whether those medications

19  prevent him from fully performing his material job duties.  The medical literature

20  clearly links the side effects of these medications to Mr. Miller's disabling condition

21  and symptoms, yet Unum failed to consider, let alone tried to exclude, this as a

22  cause of Mr. Miller's symptoms.  Given that Unum was aware that Mr. Miller was

23  taking these medications to keep his underlying medical condition under control,

24  Unum should have carefully investigated whether these side effects aligned with Mr.

25  Miller's disabling symptoms and prevented his return to full-time work, instead of

26  simply ignoring them in favor of its reliance upon the conclusory opinions of biased

27  consultants.  Insurers must affirmatively consider the side effects of medication

28  when making a disability determination, and they act improperly and unreasonably

-23-



1   when they fail to do so.[5]  Furthermore, as explained in Mr. Miller's personal

2   statement, he cannot stop taking these medications because, if he does so, his

3   underlying medical condition will become worse and he would likely be unable to

4   work in *any* capacity.

5          63.    Unum and its physician consultants repeatedly ignored the opinion of

6   Dr. S. and N.P.C., who had personally treated Mr. Miller for his disabling condition

7   for over two years and recommended that he reduce his work schedule.  None of

8   Unum's consultants offered any explanation as to how or why they reached a

9   conclusion that was in complete contradiction to the recommendations of Mr.

10  Miller's long-standing treating specialist – recommendations that were

11  demonstrably correct and that alleviated Mr. Miller's symptoms such that he could

12  continue to work, albeit at a reduced level.  This evidences the arbitrary and biased

13  nature of their "paper reviews."  As such, Unum never should have relied on the

14  opinions of its paper reviewers to deny Mr. Miller's claims.

15         64.    Unum's decision to deny Plaintiff's disability benefits based on the

16  "paper reviews" of Drs. Schwartz, Greenstein, Brown and Bartlett was improper, as

17  such a course of action has been criticized by the Ninth Circuit.  *See Montour v.*

18  *Hartford Life & Accident*, 588 F.3d 623, 630 (9th Cir. 2009) (citing *Metropolitan*

19  *Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)).

20         65.    An insurer's reliance on paper reviewers who present their opinions in

21  a conclusory fashion, making it unclear how they reached opinions that differ from

22  those of an insured's attending physicians, is improper, because such conclusions

23

24  _____

25  [5] *See Godmar v. Hewlett-Packard Co.,* 631 F.App'x 397, 406 (6th Cir. 2015)
    (noting a failure to take into consideration the side effects from plaintiff's pain
    medications and how those side effects impacted his ability to drive); *Hertan v.*

26  *Unum Life Ins. Co. of America*, 111 F.Supp.3d 1075, 1087-88 (C.D. Cal. 2015)
    (Unum failed to adequately consider how the side effects of tiredness, dizziness and

27  inability to focus affected the plaintiff's cognitive ability to do her job as an
    attorney.); *Flanigan v. Liberty Life Assur. Co. of Boston*, 277 F.Supp.2d 840, 844

28  (S. D. Ohio 2003) ("The fact that Plaintiff is on many strong medications is
    objective evidence that she is indeed chronically disabled.").

Case No.:



1   should not be relied upon over the opinions of the insured's attending physicians.

2   *See Carrier v. Aetna Life*, 2015 WL 4511620, at \*12-13 (C.D. Cal. July 24, 2015).

3       66.    Unum's failure to explain what additional information was needed to

4   support Plaintiff's claim for benefits was a wrongful failure to engage with Plaintiff

5   in a "meaningful dialogue." *Salomaa v. Honda Long Term Disability Plan*, 642

6   F.3d 666 (9th Cir. 2011) (holding that, where the administrator issues a denial based

7   on absence of medical evidence, in order to satisfy the "meaningful dialogue"

8   requirement, the administrator is obligated to state in plain language what additional

9   evidence it needed).  Here, Unum failed to explain what sort of evidence was

10  required from Plaintiff outside of that which he had already provided and what

11  Unum had already obtained.

12      67.    By highlighting statements in the claim file that support a denial of

13  Plaintiff's claim, while ignoring pertinent evidence to the contrary, both Unum and

14  its physician consultants engaged in an arbitrary and biased handling of Plaintiff's

15  file.  That is improper under the law and establishes that Unum's decision was

16  incorrect.[6]

17      68.    Given that Plaintiff's treating physician's diagnoses were based on

18  multiple in-person examinations and on reviews of objective exam findings, Unum

19  had no basis on which to deny Plaintiff's claim for LTD benefits.  Although an

20  insurer is not obligated to afford special weight to the opinion of a treating

21  physician, it must credit reliable evidence from a treater and cannot disregard it

22  without an adequate explanation.  *See Rowell v. Aviza Tech. Health & Welfare Plan*,

23  2012 WL 1672497, at \*15 (N.D. Cal. May 14, 2012).

24  _____

25  [6] *See Winkler v. Metropolitan Life Ins. Co*., 170 F.App'x 167, 168 (2d Cir. 2006) (stating that an insurer "may, in exercising its discretion, weigh competing evidence, but it may not, as MetLife did here, cherry-pick the evidence it prefers while ignoring significant evidence to the contrary"); *Stuart v. CVS Corp.*, 2010 WL 890181, at \*6 & n. 3 (E.D. Mich. Mar. 10, 2010) (finding an administrator's decision to deny benefits to be arbitrary and capricious where a file-review physician's report indicated that the physician had "selectively cherry-pick[ed] the medical records to support his non-disability finding").

26

27

28

Case No.:



69.     Courts have typically afforded greater weight to the opinions of physicians who have treated the claimant for an allegedly disabling condition for a long period of time.[7]   The more detail a physician provides concerning the bases for his or her diagnosis and opinion, the more weight his or her conclusions is afforded.[8]

70.     Given the foregoing circumstances, Mr. Miller does not have the capacity to engage fully in his occupation as a patent attorney due to symptoms associated with his underlying objective medical condition.   His symptoms prevent him from completing all the substantial and material aspects of his practice on a full-time basis.

71.     Plaintiff has exhausted his administrative remedies based on Unum's June 15, 2021 denial letter that stated that no further reviews of his claim were available.   Plaintiff has the right to bring a legal action for benefits under ERISA Section 502(a) following an adverse benefit determination on appeal.

---

[7] *See, e.g., Kibel v. Aetna Life Ins. Co.*, 2015 WL 858751, *7 (C.D. Cal. Feb. 26, 2015) ("The record's great constant is Dr. Andersson: he was a board-certified neurologist that treated Ms. Kibel from her disease's inception, including numerous in-person examinations. Thus, his reports are very credible"); *Hodjati v. Aetna Life Ins.*, 2014 WL 7466977, *14 (C.D. Cal. Dec.29, 2014); *Oldoerp v. Wells Fargo & Company Long Term Disability Plan*, 12 F.Supp.3d 1237, 1255 (N.D. Cal. 2014) ("when an in-person medical examination credibly contradicts a paper-only review conducted by a professional who has never examined the claimant, the in-person review may render more credible conclusions"); *see also Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (ascribing more weight to the opinions of physicians who personally examined the patient and described plaintiff's inability to work in great detail).

[8] *See, e.g., Carrier v. Aetna Life Ins. Co.*, 2015 WL 4511620, *12 (C.D. Cal. July 24, 2015) ("Nevertheless, the Court finds Dr. Corrado's conclusions sounder than those presented by the peer reviewers.   Many of the opinions rendered by these reviewers are presented in conclusory fashion, making it unclear how they reached such starkly contrasting results from those of Dr. Corrado despite reviewing the same materials"); *Ondersma v. Metro. Life Ins. Co.*, 2007 WL4371422, at *5 (N.D. Cal. Dec. 12, 2007) ("Here, by contrast, the opinion offered by Dr. Dixit is not conclusory in nature.   The basis for his opinion is disclosed.   Specifically, he details particular symptoms from which plaintiff suffers, including symptoms he directly observed or found to exist as a result of his examinations; further, he identifies functional limitations typically resulting from such specified symptoms and explains why plaintiff's symptoms, in particular, would cause her to be so limited"); *Williams v. United Omaha Life Insurance Co.*, 2013 WL 5519525, at *12 (N. D. Ala. Sept. 30, 2013).

Case No.:

1   72.   The proper standard of review is de novo.  Unum does not have

2  discretionary authority pursuant to California Insurance Code Section 10110.6, and

3  it erred in denying Plaintiff's claim.[9]

4   73.   When conducting a de novo review of the record, the court does not

5  give deference to the claim administrator's decision, but rather determines in the

6  first instance if the claimant has adequately established that he or she is disabled

7  under the terms of the plan.

8   74.   Regardless of the standard of review that this Court applies, Unum

9  reached an incorrect decision, given the ample medical evidence in support of

10  Plaintiff's disability.  Unum's denial letters failed to address the overwhelming

11  medical evidence supporting Plaintiff's claim for LTD benefits; Unum relied upon

12  biased "paper reviews" of Plaintiff's medical records, did not examine him and

13  failed to engage in a "meaningful dialogue" with Plaintiff regarding what additional

14  medical evidence was needed to support his claim.  Accordingly, Unum conducted a

15  biased claims investigation, consistent with its inherent conflict of interest, and

16  failed to provide Plaintiff with a full and fair review of his claim, in violation of

17  ERISA.

18   75.   Plaintiff is now and at all times relevant has remained "disabled" as

19  defined in the Policy, and has at all times relevant convincingly demonstrated his

20  total disability through medical records and other documents, information and

21  correspondence.

22   76.   Accordingly, a dispute exists between Plaintiff and Unum regarding his

23  entitlement to LTD benefits from January 2020 forward.

24

25

26  _____

[9] The Plan was offered, issued, delivered or renewed on or after January 1, 2012, but

27  before June 15, 2021.  The Plan was first offered to Plaintiff, a California resident, in 2016 and renewed every year thereafter.  As such, any grants of discretion that

28  can be deemed to be a part of the Plan are void and unenforceable, and thus the denial of benefits at issue must be reviewed de novo.

Case No.:



**FIRST CLAIM FOR RELIEF**

To Recover Benefits, Attorneys' Fees and Pre-Judgment and Post-Judgment Interest under ERISA Plan – 29 U.S.C. Sections 1132(a)(1)(B), (g)(1)

(Plaintiff against Unum and Does 1 through 10)

77.    Plaintiff incorporates the previous paragraphs as though fully set forth herein.

78.    ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan and/or to clarify his rights to future benefits under the terms of a plan.

79.    At all times relevant, Plaintiff has been entitled to LTD benefits under the Policy.  By denying Plaintiff's claim for benefits under the Policy, and by related acts and omissions, Unum violated, and continues to violate, the terms of the Policy, and Plaintiff's rights thereunder.

80.    Unum has failed to follow the claims-processing requirements of ERISA and of the Department of Labor Regulations, and has failed to conduct a "full and fair review" of the claim denial, as required by 29 U.S.C. Section 1133(2). Thus, even if the Policy vests discretion in Unum to make benefit determinations, no deference is warranted with regard to Unum's handling of this claim.  *See Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1465 (9th Cir. 1997); *Jebian v. Hewlett-Packard Company Employee Benefits Organization Income Protection Plan*, 349 F.3d 1098, 1105 (9th Cir. 2003) ("When decisions are not in compliance with regulatory and plan procedures, deference may not be warranted.").

81.    A "prudent person" standard is imposed on ERISA fiduciaries.  *See* 29 U.S.C. § 1104(a)(1)(b).  A "fiduciary" is also under a duty of loyalty and care to the beneficiaries of the Plan.  *See* 29 U.S.C. Section 1104(a)(1).  Under ERISA: (1) a fiduciary must discharge its duties solely in the interest of plan participants and beneficiaries and for the exclusive purpose of providing plan benefits to them; (2) a



fiduciary must act with care, skill, prudence and diligence; and (3) a fiduciary may not act in any capacity involving the Plan, on behalf of a party whose interests are adverse to the interests of the Plan, its participants or its beneficiaries.  Unum's handling of Plaintiff's disability benefit claim falls far short of these standards.

82.    For all the reasons set forth above, the decision to deny disability insurance benefits to Plaintiff was arbitrary, capricious, wrongful, unreasonable, irrational, contrary to the evidence, contrary to the terms of the Policy and contrary to law.  Unum abused its discretion by deciding to deny this claim, because the evidence shows its denial decision to be arbitrary and capricious.  Further, Unum's denial decision and related actions heighten the level of skepticism with which a court views a conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) and *Metropolitan Life Insurance Co. v. Glenn*, 544 U.S. 105 (2008).  Unum's denial of Plaintiff's claim constitutes an abuse of discretion, as evidenced by the aforementioned conduct.

83.    As a direct and proximate result of Unum's denial of disability benefits, Plaintiff has been deprived of disability benefits from July 1, 2020 to the present, which has caused him to experience undue stress and severe financial hardship.

84.    As a direct and proximate result of the denial of his claim for disability benefits, Plaintiff has been required to incur attorneys' fees to pursue this action and is entitled to reimbursement of these fees pursuant to 29 U.S.C. Section 1132(g)(1).

85.    A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Policy and therefore entitled to disability benefits. Plaintiff seeks the declaration of this Court that he meets the Policy's definition of "disability" and is entitled to benefits under the Policy.  In the alternative, Plaintiff seeks a remand to the claims administrator for a determination of Plaintiff's claim that is consistent with the terms of the Policy.

Case No.: 

1

**PRAYER FOR RELIEF**

2      **WHEREFORE,** Plaintiff prays that this Court grant the following relief

3 against all Defendants:

4        1.    For all Policy benefits due and owing Plaintiff, including LTD benefits.

5        2.    For costs and reasonable attorneys' fees, pursuant to 29 U.S.C. Section

6            1132(g).

7        3.    For pre-judgment and post-judgment interest on the principal sum,

8            accruing from the date on which the obligations were incurred. *See*

9            *Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 627

10           (9th Cir. 2007) ("A district court may award prejudgment interest on an

11           award of ERISA benefits at its discretion."); *Drennan v. General*

12           *Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992).  Specifically, Plaintiff

13           seeks interest at the rate of 10% per annum, pursuant to California

14           Insurance Code Section 10111.2.

15        1.    For such other and further relief as this Court deems just and proper.

16

17    Dated:  October 15, 2021            **McKENNON LAW GROUP PC**

18

19                     By: _____

                               ROBERT J. McKENNON

20                           JOSEPH S. HOFF

                          Attorneys for Plaintiff, Todd Miller

21

22

23

24

25

26

27

28



Case No.: